IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-00596-KDB-SCR

| | |
|---|---|
| TURQUOIS STONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRUIST BANK, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Defendant's "Motion to Dismiss Plaintiff's Amended Complaint" (the "Motion") (Doc. No. 14), as well as the parties' briefs and exhibits. (Doc. Nos. 15, 17, & 19).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for the Court's consideration.

For the reasons set forth below, the undersigned respectfully recommends that Defendant's Motion be <u>granted in part</u> and <u>denied in part</u>.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Court accepts the facts in Plaintiff's Amended Complaint as true for the purposes of considering Defendant's Motion to Dismiss.

Plaintiff states that she "brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e <u>et seq</u>., alleging hostile work environment, based upon sex and under the North Carlina [*sic*] Common Law alleging negligent supervision and retention." (Am. Compl., Doc. No. 12 ¶ 1). Plaintiff's employment began with Defendant Truist Bank ("Truist")

in September 2018, where she was an Associate Infrastructure Engineer assigned to the Technology Command Center Department. Id. ¶ 8. Plaintiff's job duties included "providing support of network issues that came through Defendant's Customer Support Center to ensure adherence of wiring, equipment and code configuration of Enterprise network equipment" and to provide "assistance in network planning, engineering, architecture and the development of technical standards, and made recommendations for improvements." Id.

Plaintiff was a member of an eight-person team, "all of whom were male except for Plaintiff who was the only African-American woman on the team." Id. ¶ 10. In early 2020, due to the COVID-19 pandemic, Plaintiff and her team began to work from home. Id. ¶ 9. Team members used the Webex platform to meet and communicate remotely. Id. ¶¶ 9, 11. Webex meetings are "hosted by an individual who has the capacity to admit persons, as well as deny the entrance to a Webex gathering." Id. ¶ 12.

From April 2020 through August 2020, Plaintiff's team "experience[d] interruptions in their Webex meetings by an individual screaming," described as sometimes being "primal screaming." Id. ¶¶ 13, 35. Plaintiff does not specify how frequent the interruptions occurred. A report of the interruptions was made on or about August 3, 2020, which resulted in the intruder being blocked and persons only being admitted to Webex gatherings after receiving permission. Id. ¶ 14. The report was made to "corporate security and cyber security." Id. This action suspended the uninvited interruptions for some time, but they "began again after the intruder started using the name of a team member to gain access." Id.

In February 2021, a nude image appeared on the Webex platform, which was reported to management by a number of the teammates, including Plaintiff. Id. ¶ 15. The images remained visible for almost a minute in some instances. Id. Plaintiff states that "over time the images

increased in vulgarity." Id. Plaintiff states an intruder, who was another employee, "was able to display offensive images for over eight months." Id. ¶ 36. Plaintiff details certain specific instances including on November 26, 2021, and over the following weekend when explicit nude images remained visible. Id. at 15. Plaintiff specifies that "[a]t first, they included images of a nude woman displaying her private parts." Id. But the "explicitness of the images increased to the point of showing the torso of a male, as well as his genitalia and ejaculation on the female." Id. Plaintiff was particularly offended by "the display of an African-American woman with a Caucasian male" because "she is in an interracial marriage which was known to her teammates and others since she displayed photographs in the workplace of her and her husband and family." Id. The images were all reported to management. Id.

On December 1, 2021, Plaintiff filed a complaint with Defendant's Human Resources ("HR") Department. Id. ¶ 16. In the HR complaint, Plaintiff alleged "discrimination based on her race and that she was subjected to a hostile work environment." Id. "Plaintiff claimed that the pornographic images were appearing because she was the only African-American female on the team and that she was married to a white male" and that these images were "directed to her." Id. ¶¶ 16, 28.

Plaintiff pleads additional "explicit images" on December 6, 2021, and that the "explicit images only appeared during Plaintiff's shift." Id. ¶ 17. Then again, on December 19, 2021, "Plaintiff experienced another interference which she reported to her management" which left her "unable to return [to work] after that." Id. ¶ 18. Plaintiff maintains that the "posting of sexually explicit images was rude, harassing and disrespectful" and "violated Defendant's anti-harassment policies." Id. ¶ 26.

As a result of the exposure to explicit images, Plaintiff "developed severe panic attacks for which she received counseling and treatment" and ultimately resulted in Plaintiff being unable to work. Id. ¶¶ 24, 29, 34-35. Plaintiff went on a leave of absence beginning December 19, 2021, through December 2022, when Plaintiff was "terminated under the Defendant's policies." Id. ¶ 24.

Plaintiff, and others on her team, believed an employee who was terminated in July 2021 was the person interrupting and posting explicit images on Webex. Id. ¶¶ 19, 30. The individual suspected of the Webex intrusions was terminated "after being rude and using profanity towards members of another team." Id. ¶¶ 21, 36. The employee had been reported to senior managers for being "disruptive and disrespectful to his colleagues." Id. ¶¶ 20, 35-36. Plaintiff states the Department Director knew or should have known that the conduct violated Defendant's policies, employee Code of Conduct, and anti-harassment policies, and that the explicit pornographic images would cause harm to employees. Id. ¶ 40.

Defendant did not require the individual "to remove access from his mobile phone," which gave him the ability to post the explicit images to Defendant's Webex platform after he was terminated. Id. ¶¶ 21, 36. Plaintiff contends that Defendant failed to "secure its networks and system to guard against the continued intrusions by individual" which led to "the posting of the explicit images" that "caused Plaintiff's severe panic attacks and emotional distress" requiring "medical intervention and disrupted her ability to perform work." Id. ¶ 37.

Plaintiff alleges, upon information and belief, that despite Defendant's managers being aware of the identity of the intruder, "no specific action was taken to address the matter with the individual." Id. ¶ 25. She contends that Defendant's responses to Plaintiff's complaints "did not satisfy Title VII's requirement for prompt remedial action" and "Defendant's failure to fully

investigate the intrusions into the Webex led to a higher level of intrusion and the display of more explicit pornographic images." Id. ¶ 28.

Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") on February 22, 2022. Id. ¶ 42. On June 23, 2023, the EEOC issued Plaintiff a Dismissal and Notice of Rights. Id. ¶ 42.

Plaintiff's initial Complaint was filed this Court on September 20, 2023. (Doc. No. 1). On February 14, 2024, Plaintiff Filed an Amended Complaint which included: (1) First Claim for Relief: Sexual Harassment/Hostile Work Environment Under Title VII; and (2) Second Claim for Relief: Negligent Supervision and Retention. (Doc. No. 12 ¶¶ 27-41).

On February 27, 2024, Defendant moved to dismiss all claims in the Amended Complaint and attached a copy of Plaintiff's EEOC Charge to its brief in support. (Doc. No. 14 & 14-1).[1]

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Lab'ys, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief

---

[1] In reviewing a Rule 12(b)(6) motion to dismiss, this Court "may consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" without converting the motion into a motion for summary judgment. Sec'y of State for Defense v. Trimble Nav. Ltd., 484 F.3d 700, 705 (4th Cir. 2007). The EEOC Charge is integral to the complaint and authentic as it includes the same filing date stated in the Complaint. As such, this Court may consider the EEOC Charge in evaluating the Motion. Id.

that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. Id. at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 679; see also Anand v. Ocwen Loan Serv., LLC, 754 F.3d 195, 198 (4th Cir. 2014) (recognizing the court does not accept as true legal conclusions couched as a factual allegations). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in Rule 8 of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). Indeed, where "it is clear that no relief could be granted under any set of facts that could be prove[n] consistent with the allegations . . . a claim must be dismissed." Neitzke, 490 U.S. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### B. Hostile Work Environment Claim Based on Sex Discrimination in Violation of Title VII

Under Title VII it is unlawful for an employer to "discriminate against any individual with respect to [her] . . . compensation, terms, conditions, or privileges of employment because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). For a hostile work environment claim to survive a 12(b)(6) motion to dismiss, a plaintiff must allege: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Nixon v. Kysela Pere et Fils, Ltd., No. 22-1406, 2024 WL 3666166, at *4 (4th Cir. Aug. 6, 2024) (citing Okoli v. City Of Baltimore, 648 F.3d 216, 220 (4th Cir. 2011)).

Here, Defendant does not dispute that Plaintiff has sufficiently alleged the conduct was unwelcome as Plaintiff pleads that the pornographic images were "rude, disrespectful and harassing," certain images were "[p]articularly offensive to Plaintiff" and Plaintiff filed a complaint with HR. (Doc. No. 12 ¶¶ 15, 16 & 26); see also EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009) (finding plaintiff established the "unwelcome" element because plaintiff had complained about harassment to her co-workers, to supervisors, and informed them the conduct was objectionable).

Defendant challenges Plaintiff's pleading of the second element—whether the conduct was based on Plaintiff's sex. "An employee is harassed or otherwise discriminated against 'because

of' his or her gender if, 'but for' the employee's gender, he or she would not have been the victim of the discrimination." Smith v. First Union Nat'l Bank, 202 F.3d 234, 242 (4th Cir. 2000). "Sexualizing the work environment by placing photos of nude women or women in sexually provocative dress and poses in common areas is detrimental to female employees and satisfies the 'because of sex' requirement." Hoyle v. Freightliner, LLC, 650 F.3d 321, 331-32 (4th Cir. 2011). A plaintiff may sufficiently plead sex-based discrimination in the workplace "even though she is not subjected to sexual advances or propositions." Id. at 331 (citing Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc)).

Here, Plaintiff pleads she was the sole female member of her team and the explicit images included nude women and their private parts and a male ejaculating on a woman. (Doc. No. 12 ¶¶ 16-17). Certain images "only appeared during Plaintiff's shift." Id. ¶ 17. Plaintiff further pleads some of the images depicting an African-American woman with a Caucasian male were particularly offensive to her because, as she describes herself, she is in an "interracial marriage which was known to her teammates" by the photographs she displayed of her family. Id. ¶ 15. Defendant points out that the pornography images were posted to her entire work team, comprised of both men and women, and therefore, Plaintiff could not satisfy the second element.

Just as the Fourth Circuit observed in Hoyle, "[a]lthough these photos may have been seen by both female and male employees, a juror could find [m]uch of the conduct . . . particularly offensive to women and . . . intended to provoke [plaintiff's] reaction as a woman." Hoyle, 650 F.3d at 332 (reversing the district court and finding the district court's conclusion that Hoyle "cannot establish that any of the alleged conduct occurred because of her sex as the conduct took place in group settings" was "unfounded."); see also Ocheltree, 335 F.3d at 332 (rejecting Defendant's argument that the conduct was not directed at the plaintiff or women because "it could

have been heard [or seen] by anyone present in the shop" and "was equally offensive to some of the men" and concluding the "because of sex" element was met).

Defendant further argues that rulings from the Fourth Circuit "show that additional evidence is needed, aside from the mere presence of pornography in the workplace, to satisfy the 'because of sex' requirement." (Doc. No. 15 at 10-11). The Court disagrees.[2] In the cases cited by Defendant, the prevalence of pornography or related behavior was a circumstance considered, but there were no findings on whether pornography alone was sufficient or insufficient. Ocheltree, 335 F.3d at 331-33; Cent. Wholesalers, Inc., 573 F.3d at 175. The first case Defendant cites is Ocheltree, where the Fourth Circuit, in an en banc opinion, concluded the "because of sex" requirement was "easily sustained." Ocheltree was decided in the Rule 50 context, a different standard than the one applied here. Id. at 331. The Fourth Circuit discussed multiple issues that supported the jury's verdict, including that the individuals at issue "behaved as they did to make [the plaintiff] uncomfortable and self-conscious as the only woman in the workplace." Ocheltree, 335 F.3d at 332. Similarly, Plaintiff has pled she the only woman on her small, eight-person team and certain of the explicit images appeared only during her shift. (Doc. No. 12 ¶ 10, 16 & 17).

The second case Defendant cites is EEOC v. Cent. Wholesalers, Inc. 573 F.3d 167 (4th Cir. 2009). In Cent. Wholesalers, the Fourth Circuit reversed the district court's grant of summary judgment in favor of defendants. Among other things, the Fourth Circuit found that "a reasonable juror could conclude that the harassment was based on [plainitff's] gender" citing evidence that plaintiff's "co-workers used the word b *** h on a daily basis when referring to women, had Playboy items around the office, watched pornography right next to [plaintiff] such that she could

---

[2] The Court recognizes and appreciates Defendant's candor with this Court in recognizing that such cases were decided at later stages of litigation. (Doc. No. 15 at 20). This only emphasizes that it would be inappropriate to dismiss Plaintiff's Amended Complaint at this early stage so long as Plaintiff has sufficiently included facts to support her claim.

hear the sound of people having sex, and used a pornographic screensaver depicting partially naked women." Id. at 175. Nowhere did the Fourth Circuit indicate that pornography without gender-specific epithets would fail to meet the "because of sex" requirement. Id. at 175-77.

Moreover, in Harris v. Mayor and City Council of Baltimore, the Fourth Circuit reiterated its holding in Hoyle stating:

> We recently clarified that "[a] juror could reasonably find that sexualizing the work environment by placing photos of nude women or women in sexually provocative dress and poses in common areas is detrimental to female employees and satisfies the 'because of sex' requirement." Hoyle at 331. . . We recognized that "the critical inquiry is whether the plaintiff's *environment* was hostile. . . 'because of' her sex" and not solely on whether the conduct was directed at the plaintiff. Id. at 332 . . .
> In Hoyle, we deemed this requirement satisfied based on several factors, including **"photos of scantily-clad women in G-strings taped to the lid of a company-issued toolbox"** on the factory floor, Hoyle, 650 F.3d at 326; calendars depicting **"women in sexually suggestive positions in bathing suits"** located in a company's break room and cafeteria, id. at 327; and **"a nude picture of a woman appear[ing] as the [company] computer's screen saver,"** id. Similarly here, we are persuaded that a reasonable juror could find on this record that the "provocative pictures" throughout the shop areas sexualized [plaintiff's] work place and satisfied the "because of" gender requirement. As in Hoyle, the pictures here featured "scantily clad" women or women who were simply "naked." J.A. 366–67, 402, 429. The City's EEO investigation found such images "displayed on tables, walls, workstations and two offices." J.A. 557. The images were commonly visible "[i]n the shop area and in the hall bulletin board." J.A. 429. [The plaintiff] also viewed "provocative photographs" that were "placed under the glass" of the break room table, where she sat every day while her co-workers conducted "safety meetings" without her. J.A. 616.

Harris v. Mayor & City Council of Baltimore, 429 F. App'x 195, 200–01 (4th Cir. 2011) (emphasis in original).

Considering the applicable case law and the more lenient motion to dismiss standard, the Court finds that Plaintiff plausibly alleges that the harassing conduct of posting multiple pornographic images on Webex when she was the only female on her team and certain images only appeared during her shift was "because of" her sex. Hoyle, 650 F.3d at 332 (quoting Petrosino v. Bell Atl., 385 F.3d 210, 222 (2d Cir. 2004)) (holding "a reasonable juror could find the screen

saver depicting a naked woman reflected sex-based animus in the plaintiff's work environment and was loaded on the computer because of [her] sex"); Ocheltree, 335 F.3d at 331-33; Cent. Wholesalers, Inc., 573 F.3d at 175; Harris, 429 F. App'x at 200; see also Greene v. A. Duie Pyle, Inc., 170 F. App'x 853, 856 (4th Cir. 2006) (noting in some circumstances "the prevalence of pornography and sexual comments in the workplace can support a claim of hostile work environment," even though the specific circumstances in that case did not at the summary judgment stage.).[3]

The Court now examines whether Plaintiff has plausibly alleged facts to support the third element—sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment. The "severe or pervasive" element has both subjective and objective components. Ocheltree, 335 F.3d at 333. "The environment must be perceived by the victim as hostile or abusive, and that perception must be objectively reasonable." Hoyle, 650 F.3d at 333 (citations omitted). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" Id. This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Ocheltree, 335 F.3d at 333. "Hostile work environment claims . . . [by] their very nature involve repeated conduct." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 103 (2002). Occasional teasing, off-handed remarks or language, and jokes typically do not meet this standard. Ocheltree, 335 F.3d at 333.

---

[3] Both Plaintiff and Defendant cite to several non-binding cases to establish whether or not pornography in the workplace is sufficient to constitute a hostile work environment for women generally. (Doc. No. 17 p. 8). See Williams v. CSX Transp. Co., Inc., 533 F. App'x. 637 (6th Cir. 2013); Avery v. IdleAire Tech. Corp., No. 3:04-CV-312, 2007 WL 1574269 (E.D. Tenn. May 29, 2007); Adams v. City of Gretna, No. 07-9720, 2009 WL 1668374 (E.D. La. June 12, 2009); Williams v. City of Chicago, 325 F. Supp. 2d 867 (N.D. Ill. 2004); Brinkley v. City of Greenbay, 392 F. Supp. 2d 1052 (E.D. Wis. 2005). The undersigned has relied on binding Fourth Circuit precedent.

Plaintiff's Amended Complaint sufficiently pleads the "severe or pervasive" element. Plaintiff subjectively viewed the environment to be abusive as she notes she was "offended" by the multiple incidents of explicit images and displays, that she reported the conduct to HR and her management, and that she was unable to return to work after multiple incidents. (Doc. No. 12 ¶¶ 15-18, 28, 34); Harris, 429 F. App'x at 202 (as to the subjective inquiry, noting plaintiff found the work environment to be hostile, this affected her performance, and she complained of the conduct) (citing Cent. Wholesalers, 573 F.3d at 176 (finding the subjective element met when a female employee "complained about . . . [the] harassment and stated that she found such harassment objectionable.")).

Based on applicable caselaw, Plaintiff too has sufficiently pled facts that plausibly support that the incident and displays would have been objectively abusive to a reasonable person in Plaintiff's position. Just as the Fourth Circuit noted in Hoyle, "the multiple incidents and displays here were far from 'mildly inappropriate'" as pled by Plaintiff. 650 F.3d at 334. While the conduct was not physically threatening, "actionable harassment can be severe and/or pervasive without being physically threatening, e.g., where it is humiliating and demeaning." Id. at 334. Plaintiff, as her team's sole female member, pleads multiple incidents and displays of explicit, pornographic nude images over several months, including nude women displaying private parts and the ejaculation of a male on a female. (Doc. No. 12 ¶¶ 15, 17, 18 & 28). After complaining of these incidents to HR and management, the conduct continued on other occasions. Id. ¶¶ 15-17. The conduct is beyond the garden-variety off-handed remarks, occasional teasing, or jokes, and, as pled, would be objectively abusive to a reasonable person. Harris, 429 F. App'x at 202 (concluding the objectively severe or pervasive element was met based on sexually explicit pictures of scantily clad or naked women were located throughout the shop, including the common areas and where

defendant failed to remove the offending pictures); Cent. Wholesalers, 573 F. 3d at 176; Hoyle, 650 F.3d at 333 (finding district court erred in concluding the severe and pervasive element was not met where there were multiple incidents and displays of women in a a sexually subservient and demeaning light).

The Court now turns to the fourth and final element of whether Plaintiff has sufficiently pled whether there is a basis for imputing liability to the employer. The employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it. Hoyle, 650 F. 3d at 335; Ocheltree, 335 F.3d at 333-34. "Knowledge of the harassment can be imputed to an employer if a 'reasonable [person], intent on complying with Title VII,' would have known about the harassment." Ocheltree, 335 F. 3d at 334 (citing Spicer v. Va., Dep't of Corr., 66 F.3d 705, 710 (4th Cir. 1995) (en banc)). Plaintiff may establish a "basis for imposing liability" by showing the employer "knew about the harassment" but did not "respond with remedial action 'reasonably calculated to end the harassment.'" Cent. Wholesalers, 573 F. 3d at 177. "The mere fact that a [defendant's] strategy was not successful does not necessarily mean the strategy was not a reasonably calculated one." Pryor v. United Air Lines, Inc., 791 F.3d 488, 499 (4th Cir. 2015) (citing EEOC v. Xerxes Corp., 639 F.3d 658, 669-70 (4th Cir. 2011)). But "the effectiveness of an employer's actions remains a factor in evaluating the reasonableness of the response." Id.

Plaintiff pleads that she informed management and submitted a complaint to HR about the explicit images and displays and how they were offensive to her. (Doc. No. 12 ¶¶ 15, 16, 18, 22). Plaintiff pleads Defendant failed to take specific action to address the matter and to investigate. Id. ¶¶ 25, 28. She alleges the behavior violated Defendant's policies and procedures. Id. ¶ 26. Plaintiff acknowledges that an individual was terminated in the summer of 2021, but even after

that termination, Plaintiff maintains Defendant failed to take appropriate action to secure its systems and the pornographic images continued to be displayed through December 2021. Id. ¶¶ 21, 25. In light of these factual allegations, Plaintiff has sufficiently pled that Defendant knew or should have known about the harassment, but failed to take appropriate remedial action. Given that it allegedly terminated the individual suspected, the reasonableness of the Defendant's actions in response would be a question of fact not appropriate to decide at this stage.[4]

Considering all of this, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's First Claim for Relief: Sexual Harassment/Hostile Work Environment Under Title VII be <u>denied</u>.[5]

### C. Negligent Supervision and Retention Claim

Defendant also moves to dismiss Plaintiff's claim for negligent supervision and retention for failure to state a claim. Under North Carolina law, to state a claim of negligent supervision and retention against an employer, a plaintiff must plausibly allege an "incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." Wilkerson v. Duke Univ., 748 S.E.2d

---

[4] Defendant contends in its Reply brief that "The Amended Complaint still claims that the sexually explicit images did not begin appearing until November 2021—after the suspected intruder was discharged." (Doc. No. 19 at 10-11). Plaintiff's Amended Complaint indicates the nude images began in February 2021, and continued through December 2021, over an eight-month period. (Doc. No. 12 ¶¶ 15, 17, 18 & 36).

[5] The Court observes that certain portions of Plaintiff's and Defendant's brief were devoted to a hostile work environment claim based on race (as opposed to sex). However, a hostile work environment claim based on race was not pled in Plaintiff's Amended Complaint. (Doc. No. 12). Plaintiff states in her complaint "Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, alleging hostile work environment, based upon <u>sex</u> and under the North Carlina [*sic*] Common Law alleging negligent supervision and retention." Id. ¶ 1 (emphasis added). In addition, Plaintiff has titled her claim as "First Claim for Relief: Sexual Harassment/Hostile Work Environment Under Title VII." Id. at 7. While headings alone are not binding, Plaintiff further pleads "sexual harassment" when explaining her claim. Id. ¶ 28. Moreover, Plaintiff's EEOC Charge indicates "I believe that I have been discriminated against on the basis of my sex, in violation of Title VII of the Civil Rights Act of 1964." (Doc No. 14-1). Plaintiff is the master of her own complaint, and the Court cannot accept new allegations or claims submitted as part of a brief. McNulty v. Commc'ns Workers of Am., No. 3:12CV-22-MOC-DSC, 2012 WL 1569601, at *3 (W.D.N.C. Mar. 16, 2012) ("Additional factual allegations contained in a response brief are not considered on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)"). As a result, the Court will not further address these arguments because Plaintiff has failed to properly bring such a claim before the Court.

154, 160 (N.C. Ct. App. 2013) (quoting Smith v. Privette, 495 S.E.2d 395, 398 (N.C. Ct. App.1998)); see also Hogan v. Forsyth Country Club Co., 340 S.E.2d 116 (N.C. Ct. App. 1986); Medlin v. Bass, 398 S.E.2d 460, 462 (N.C. 1990); Barrow v. Branch Banking & Trust Co., 3:16-cv-675, 2017 WL 4124180, *3-6 (W.D.N.C. Sept. 18, 2017). "In other words, a claim for negligent retention or supervision" requires allegations "that an employee of the employer 'committed a tortious act resulting in plaintiffs' injuries.'" Chestnutt v. Town of Ahoskie, 2:21-cv-4-BO, 2021 WL 6125892, at *3 (E.D.N.C. Aug. 26, 2021) (quoting Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 744 (4th Cir. 1997)).

Defendant points out that Plaintiff has failed to allege a common law tort required to support the negligent supervision and retention claim. The Court agrees. As an initial matter, Plaintiff cannot rely on a Title VII violation, which North Carolina does not recognize as a common law tort. McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003). In response, Plaintiff fails to cite any cases other than citing to Hogan for the required elements, but argues that Plaintiff has alleged facts to support a negligent infliction of emotional distress ("NIED") claim to serve as the common law tort. 340 S.E.2d at 117. This is insufficient.

In Barrow, this Court similarly dismissed a negligent supervision and retention claim where the plaintiff had not sufficiently alleged a common law tort. 2017 WL 4124180, at *3-4. As this Court noted, discrimination is inherently intentional and in Barrow, the plaintiff's complaint similarly relied on facts derived from the alleged Title VII claim. Id. Plaintiff attempted to address this issue by incorporating references to negligent infliction of emotional distress within her negligent supervision and retention claim. But, this too falls short. To properly state a claim for NIED, Plaintiff must plausibly allege "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often

referred to as 'mental anguish') and (3) the conduct did in fact cause the plaintiff severe emotional distress.'" Barrow, 2017 WL 4124180, at *3 (quoting Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 395 S.E.2d 85, 97 (N.C. 1990)). Defendant correctly states that a NIED claim cannot be premised on intentional conduct. (Doc. No. 15 at 15); see Springs v. Mayer Brown, LLP, No. 3:09–cv 352–MR–DSC, 2009 WL 3461231, at *7 (W.D.N.C. Oct. 20, 2009) ("The law is clear, however, that inherently intentional conduct, such as discrimination, cannot support a claim for negligent infliction of emotional distress.") (collecting cases); Hall v. Rockingham County, No. 1:15CV938, 2016 WL 5400413, at *8 (M.D.N.C. Sept. 27, 2016) ("It is well-settled in the Fourth Circuit that allegations of intentional conduct are insufficient to form the basis of a negligent infliction of emotional distress claim."); Gauthier v. Shaw Grp., Inc., No. 3:12-CV-00274-GCM, 2012 WL 6043012, at *9 (W.D.N.C. Dec. 4, 2012) (holding that labeling discriminatory "conduct as negligent is insufficient to support a claim for NIED"); Horne v. Cumberland Cnty. Hosp. Sys., Inc., 746 S.E.2d 13, 19 (2013) ("Allegations of intentional conduct . . . even when construed liberally on a motion to dismiss, cannot satisfy the negligent element of an NIED claim"). Here, Plaintiff predicates her negligent supervision and retention claim on Defendant's alleged violation of Title VII by failing to provide a work environment that is free from sexual harassment. (Doc. No. 12 ¶ 40). Although Plaintiff pleads that Defendant knew or should have known the identity of the individual who was suspected of posting the explicit materials, and that Defendant failed to take appropriate action, all of this connects back to the inherently intentional conduct forming the basis of her Title VII claim. Id. ¶¶ 34-39; see also Redman v. Am. Airlines, Inc., 3:22-cv-00515-RJC-DCK, 2023 WL 4768696, at *3 and n.1 (W.D.N.C. July 26, 2023) (observing "federal courts interpreting North Carolina law note with near uniformity that acts of discrimination and harassment, because they are inherently intentional,

cannot form the basis of an NIED claim."). Given this authority, Plaintiff has not sufficiently pled the "tortious act" necessary for her negligent supervision and retention claim.[6] The undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>granted</u> as to the negligent supervision and retention claim (or any related claims such as NIED or negligence incorporated therein).

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Motion to Dismiss" (Doc. No. 14) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the undersigned recommends that Defendant's Motion be <u>denied</u> as it relates to Plaintiff's First Claim for Relief: Sexual Harassment/Hostile Work Environment Under Title VII and be <u>granted</u> as it related to Plaintiff's Second Claim for Negligent Supervision and Retention.

### IV. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to <u>de novo</u> review by the District Judge. <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. <u>Id.</u> "In order 'to

---

[6] Even if the Court were to loosely construe the Amended Complaint and other allegations related to "negligence" or negligent action of the part of Defendant, this too fails for the same reasons. <u>Barrow</u>, 2017 WL 4124180, *5-6 (similarly dismissing a negligent supervision and retention claim and rejecting NIED and "loose reading" of negligence claims); <u>Chestnutt</u>, 2021 WL 6125892, at *3 (dismissing negligent supervision and retention claim and NIED claim); <u>Jackson v. FKI Logistex</u>, 608 F. Supp. 2d 705, 706-709 (E.D.N.C. 2009) (dismissing claim for negligent supervision and retention).

preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO RECOMMENDED**.

Signed: August 23, 2024

Susan C. Rodriguez
United States Magistrate Judge